UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

HIRAM WILSON #965365,

        Plaintiff,

v.

BRICE SWANSON, et al.,

        Defendants.
_____/

Case No. 1:25-cv-00181

Hon. Robert J. Jonker
U.S. District Judge

# REPORT AND RECOMMENDATION

## I. Introduction

This Report and Recommendation (R. & R.) addresses Defendant's motion for summary judgment due to Plaintiff's failure to exhaust administrative remedies. (ECF No. 21.)

Plaintiff – state prisoner Hiram Wilson – filed a complaint under 42 U.S.C. § 1983 alleging that Defendants violated his Eighth Amendment rights on June 23, 2024, by using excessive force against him when he was removed from his cell. (ECF No. 1.) Two Defendants – Sergeant (Sgt.) Swanson and Corrections Officer (CO) Hudson – argue that Plaintiff failed to exhaust his administrative remedies against them. Plaintiff also named two John Doe Defendants in his complaint. They have not been identified or served.

It is undisputed that Plaintiff was on "modified access" to the grievance system, and that he never properly filed a grievance against Defendants.[1] Plaintiff filed one relevant grievance that was rejected because he failed to obtain a grievance form from the grievance coordinator, as required for prisoners on modified access. Plaintiff claims that his requests for grievances were improperly denied and that he did not know Sgt. Swanson's name at the time he made a request for a grievance form or at the time he filed his grievance.

Defendants argue that Plaintiff failed to properly exhaust a grievance against them and he failed to request a grievance form that would at least arguably raise his alleged excessive force claims against them in accordance with the modified access to the grievance procedure requirements. Defendants argue that Plaintiff's failure to make an appropriate request for a grievance form, despite instructions by the grievance coordinator to do so, requires their dismissal without prejudice.

It is respectfully recommended that the Court grant Defendants' motion for summary judgment and dismiss Defendants Sgt. Swanson and CO Hudson from this case.

## II. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to

---

[1] Pursuant to the Michigan Dept. of Corrections' Policy Directive (PD) 03.02.130 (eff. Sept. 25, 2023), a prisoner who files an excessive number of improper grievances may be placed on "modified access", which requires the prisoner to obtain a grievance form from the prison's Grievance Coordinator (GC) prior to filing a Step I grievance. (ECF No. 22-2, PageID.129 (PD 03.02.130 ¶¶ PP-TT).)

2

judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[2] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III. Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden—the plaintiff on a claim for relief or the defendant on an affirmative defense—his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof

---

2   The Seventh Amendment does not always require courts to submit factual disputes about exhaustion to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015). However, when the exhaustion issue is intertwined with the merits of a claim, the Seventh Amendment requires a jury trial on the exhaustion issue. *Richards v. Perttu*, 605 U.S. 460, 479, 145 S.Ct. 1793, 1807 (2025).

"must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). To properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where

4

prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524.  In the Court's view, this objective was achieved in three ways.  First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id*. at 525.  Second, "the internal review might 'filter out some frivolous claims.'" *Id*. (quoting *Booth*, 532 U.S. at 737*)*.  And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id*.  When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (effective September 25, 2023) sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint.  Inmates must first attempt to informally resolve a grievable issue within two business days of becoming aware of the issue, unless prevented by circumstances beyond his or her control. *Id*. at ¶ W.  If informal resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days

of the attempted informal resolution. *Id.* at ¶¶ W, CC. The inmate submits the grievance to a designated Grievance Coordinator, who assigns it to a respondent. *Id.* at ¶ CC. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ Y (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. MDOC Policy Directive 03.02.130 at ¶¶ JJ. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for medical care grievances. *Id.* at ¶ LL.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ NN. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* The Grievance Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ OO.

When the grievance procedures are not available because the issue presented is non-grievable, exhausting those procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding

6

non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well-known proverb states, they cannot have their cake and eat it too."). However, when other administrative remedies are available, the prisoner is required to exhaust those remedies prior to filing a federal lawsuit.

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id*. at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and

7

should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).

### IV. Analysis

Wilson submitted grievance ICF 24-07-0751-28 naming only CO Hudson for allegedly assaulting him on June 23, 2024.[3] His Step I grievance stated:

---

[3] Wilson also submitted grievance ICF 24-07-075-28e against John Doe 1 and John Doe 2 for sexual assault on June 23, 2024. (ECF No. 22-3, PageID.142.) This grievance is not relevant to Plaintiff's complaint.

8



(ECF No. 22-3, PageID.141.)

The grievance was rejected because Wilson failed to follow the procedure to obtain a grievance form while on modified access:

> **Michigan Department of Corrections**
> **GRIEVANCE REJECTION LETTER**
>
> DATE: 7/10/2024
>
> TO: WILSON 965365   LOCATION: ICF  1-038
>
> FROM: Grievance Coordinator: K. Miller
>
> SUBJECT: Receipt/Rejection/Denial for Step I Grievance
>
> Your Step I grievance regarding   Modified access, procedure not followed   was received in this office on 7/10/2024   and was rejected due to the following reason:
> Your grievance is being rejected for the reason that you are in violation of PD-03.02.130. You must request a grievance for, from the greivance coordinator, per policy directive 03.02.130.
>
> While on modified access, the prisoner or parolee shall be able to obtain grievance forms only through the Step I Grievance Coordinator. A grievance form shall be provided if the Step I Grievance Coordinator determines that the issue the prisoner or parolee wishes to grieve is grievable and otherwise meets the criteria outlined in this policy. If a prisoner or parolee on modified access attempts to file a grievance using a form not provided by the Grievance Coordinator, the Grievance Coordinator may reject the grievance in accordance with Paragraph P. Grievant did not receive this grievance form through the Grievance Coordinator. Grievance is rejected at step I for violating the modified access procedure and as untimely.

(ECF No. 23, PageID.153.)

Wilson's Step II appeal was denied based upon Grievance Coordinator Miller's response. (ECF No. 23, PageID.155-156.) The Step III appeal was rejected, due to missing a Step II appeal and response. (ECF No. 22-3, PageID.140.)

Wilson did make several requests for grievance forms, but Grievance Coordinator Miller denied his requests because they were vague. (ECF No. 23, PageID.160-171.) Grievance Coordinator Miller further submitted an affidavit explaining why he denied Wilson's requests for grievance forms:

10

> 8. Between June 23 and July 10, 2024, Wilson submitted 12 requests for Step I grievance forms (Att. D). Although six of Wilson's 12 requests concerned events that allegedly occurred on June 23, 2024 (Att. D at 1, 2, 3, 5, 8 & 12), they were all denied as vague under PD 03.02.130 ¶ P.1, specifically:
>
> - Page 1—Does not identify the staff involved, the person Wilson attempted to resolve the issue with, or when he attempted to resolve the issue;
> - Page 2—Does not identify the staff involved, the person Wilson attempted to resolve the issue with, or when he attempted to resolve the issue;
> - Page 3—Does not specify what care is needed or what the injury is, or how Wilson attempted to resolve the issue by submitting a healthcare kite;
> - Page 5—Does not identify the staff involved, the person Wilson attempted to resolve the issue with, or when he attempted to resolve the issue;
> - Page 8—Does not identify the staff involved or when Wilson attempted to resolve the issue; and
> - Page 12—Does not identify the staff involved or when Wilson submitted the PREA Grievance and kite.
>
> One was also denied for not attempting to resolve the issue being grieved (Att. D at 3), and another was also denied as untimely (Att. D. at 12). A review of the records shows that Wilson did not obtain a Step I grievance form from my office to file ICF-751.

(*Id.*, PageID.149.)

Wilson had previously been informed that while he was on modified access to the grievance procedures, he must first obtain a grievance form from the Grievance Coordinator by submitting a request in writing that is "a clear explanation of your complaint that includes all pertinent information, necessary documents and positive identification of the staff member involved." (*Id.*, PageID.157.) In the opinion of the undersigned, Wilson failed to comply with this requirement and his grievance was properly rejected. In the opinion of the undersigned, there exists no genuine issue of material fact and Defendants are entitled to summary judgment.

11

## V. Recommendation

The undersigned respectfully recommends that this Court grant Defendants motion for summary judgment and dismiss Sgt. Swanson and CO Hudson without prejudice due to Plaintiff's failure to exhaust his administrative remedies.

It is further recommended that the Court dismiss unserved John Doe Defendants 1 and 2 without prejudice under Fed. R. Civ. P. 4(m). [4]

If the Court accepts this recommendation, this case will be dismissed.


Dated:   October 29, 2025                                 /s/ *Maarten Vermaat*
                                                          MAARTEN VERMAAT
                                                          U. S. MAGISTRATE JUDGE


**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).

---

[4]    Rule 4(m) provides that the Court must, after providing plaintiff with notice, either dismiss or order service within a specified time frame against a Defendant who has not been served within 90 days after the complaint was filed.